DOYLE NASH v. THE STATE.

No. 14865. Delivered April 13, 1932.
Rehearing Denied June 24, 1932.
Reported in 51 S. W. (2d) 689.

The opinion states the case.

*Richard & A. P. Mays* and *Lovett & Lovett,* all of Corsicana, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Arson is the offense; the punishment, two years in the penitentiary.

The evidence for the state in substance was as follows: Roy Akin, Jr., testified that he lived in Mexia, Texas, which is about thirty miles from the town of Corsicana; that on the evening of July 6th, 1931, he was engaged in a filling station business; that the appellant between 9 and 10 o'clock at night bought from him three gallons of gasoline and that he said he wanted it for the purpose of using it in a gasoline stove he had in his house; that he loaned him a five-gallon container to put the gasoline in and the appellant was to return it the next morning. He further testified that the appellant left his house about 12 o'clock.

The house that was burned was situated in the town of Corsicana and was owned by one W. J. McAdams, who lived in Big Spring, Texas, at the time of the fire. It is shown that the house burned was unoccupied and the fire started somewhere about 1 o'clock on the morning of July 7th.

A witness by the name of George Bridges testified that he was going home and his attention was attracted by what appeared to be an explosion; that he saw some one come out of the house and the person he saw was the appellant, Doyle Nash; that at the same time he saw a Ford coupe about ten steps from the house and he saw the appellant get in the car and go off as fast apparently as the car could go. The next time he saw the appellant was when they brought him to the city hall and he then identified him as the man he had seen coming out of the house.

O. B. Nutt testified that on the day after the fire about noon he arrested the appellant at his home about eighteen miles from Corsicana, and he noticed that at the time he arrested the appellant that he did not have on any shirt and had on overalls; that on his right hand there was a blister and that his eyelashes were burned off and his hair was singed; that he was burned clear up to his elbow on his arm.

On the trial of the case, W. J. McAdams was allowed to testify that he was the owner of the house that was burned.

Bill of exception No. 1 reserved an exception to this testimony on the ground that the house being vacant, and the indictment alleging ownership to be in W. J. McAdams, and the property being private property, that it was necessary to prove the ownership of said property by a conveyance and not by parole. We are cited to the cases of Goldsmith v. State, 46 Texas Crim. Rep., 556, 81 S. W., 710, 711; Allen v. State, 62 Texas Crim. Rep., 501, 137 S. W., 1133; Hester v. State (Texas Crim. App.), 51 S. W., 932; Cox v. State, 100 Texas Crim. Rep., 172, 272 S. W., 490.

In the Goldsmith case, supra, the appellant was convicted of arson, and the house burned was alleged to belong to one Charles Burk. The evidence showed that no one was occupying the house or premises when the house was burned. The opinion in that case, so far as applicable to the issue herein involved, reads as follows: "Usually and generally it is sufficient to prove possession of property in cases of arson by oral testimony. Many cases have been written, and some of them are referred to in the state's brief showing that arson is directed more against the possession and occupancy than towards the ownership of the destroyed property. As a general rule, that proposition is correct. All our cases examined, except one, show the house and premises were occupied at the time of the burning, and it was not a material question as to the real ownership. Rogers' case, 26 Texas App., 404, 9 S. W., 762, and Wigley's case, 34 Texas Crim. Rep., 514, 31 S. W., 393, are relied upon by the State. If the house had been occupied and ownership or occupancy had been alleged in the occupant, these two cases might be in point. Appellant relies upon Hester v. State (Texas Crim. App.), 51 S. W., 932 and Tuller v. State, 8 Texas App., 501. The Hester case is the one alluded to above, in which the house was unoccupied. It was a schoolhouse belonging to the county. Ownership was alleged in the county judge, who was permitted to testify that the house was a public free school building. The deed was not offered in evidence, and objection was urged because the ownership was not proven by deed. Passing upon that question, this court said it was immaterial, because the law itself made the county judge the owner of the property; that the title in him was a matter of law and was sufficiently proved without the deed. We are of the opinion, under the peculiar facts of this case—the property being private property and unoccupied—that the deed should have been introduced."

In the case of Allen v. State, 62 Texas Crim. Rep., 501, 137 S. W., 1133, 1136, when the personnel of this court was the same as when the opinion in the Goldsmith case, supra, was handed down, the indictment in that case alleged that the defendant "did unlawfully, wilfully, and maliciously set fire to and burn a certain house of one D. S. Arnold;"

and a witness was permitted to testify that he had been the owner of the gin outfit and building, but had sold said building and gin property to one D. S. Arnold and executed to him a deed of conveyance, and some two or three weeks after he had sold the gin property to Arnold, the house was destroyed by fire in the night. The defendant in that case reserved an exception to this testimony on the ground that the deed was best evidence and oral testimony was inadmissible to show that Arnold was the owner of the property, and cited in support of said contention the case of Goldsmith v. State, 46 Texas Crim. Rep., 559, 81 S. W., 710. Judge Harper, speaking for the court in construing the Goldsmith case, said: "The case cited does not hold, and we do not think that in a case of arson it is essential that the deed be introduced. As stated in that case, it might be better practice, yet in passing on cases of arson it has frequently been held, and the rule seems to be, that while parol evidence is not admissible to prove the title to real estate, and evidence by deed has been required where the crime is against the property right of the fee owner, generally it is sufficient to prove possession of a property by parol testimony, since the offense is directed against the possession and occupancy, rather than against the absolute ownership, and the allegation of ownership is merely to describe and identify the subject of the crime, and the title is not in issue. This has been the holding of this court, so far as we can ascertain by reading the cases," citing in support of said holding the cases of State v. Burrows, Houst. Cr. Cas. (Del.) 74; State v. Meyers, 9 Wash., 8, 36 P., 1051; Knights v. State, 58 Neb., 225, 78 N. W., 508, 76 Am. St. Rep., 78; State v. Elder, 21 La. Ann., 157; State v. Jaynes, 78 N. C., 508; State v. Daniel, 121 N. C., 574, 28 S. E., 255, and authorities cited by these cases.

In the case of Tinker v. State, 77 Texas Crim. Rep., 506, 179 S. W., 572, it is shown in said opinion that the state introduced the following testimony, to-wit: That a gin was burned in the town of Snyder, Scurry county, Texas, on or about the 18th day of October, 1913; that the said gin belonged to Oz Smith. This testimony was objected to by the defendant. While the judge writing the opinion held that under the rule the bill could not be properly considered, he further held that there was no doubt that such evidence was admissible and that it has always been held in this state that the title to the burned property in this offense is never in issue, and that it is not essential that any deed to the alleged owner be introduced in evidence, but that oral evidence of the possession and ownership is always admissible. Citing in support thereof, Allen v. State, 62 Texas Crim. Rep., 501, 137 S. W., 1133, and cases therein cited.

In the case of Cox. v. State, 100 Texas Crim. Rep., 172, 272 S. W., 490, 491, the opinion showed that it was the state's theory that a man by the name of Collier had purchased the house and lot from one Johnson and his wife; that at the time of the commission of the alleged offense,

Johnson and his wife had vacated the premises, but Collier had not yet occupied the premises. The position taken by the appellant was that the property being vacant, it was incumbent upon the state to make proof of ownership by conveyance. The opinion further showed that the state, antecedent to the trial, gave notice to the appellant that there would be introduced in evidence, upon behalf of the state, a certified copy of the record of the deed from L. L. Johnson and wife, Ella Johnson, to Collier, which copy was filed with the papers in the case. The certified copy of the deed offered in evidence contained a certificate of acknowledgment of L. L. Johnson, but not of his wife. The state was then permitted to introduce parol testimony that the acknowledgment of Ella Johnson had been taken and certified. The defendant in that case excepted to the offering of the certified copy of the deed and parol testimony over the objection of the appellant.

The appellant in the case before us cites and relies upon the following statement from said case: "The present case does not involve the question of title, but it was merely incumbent upon the state to prove the character of ownership requisite in a criminal case, and this may ordinarily be done by parol or by the circumstance of possession or occupancy. Rogers v. State, 26 Texas App., 404, 9 S. W., 762; Wyley v. State, 34 Texas Crim. Rep., 514, 31 S. W., 393.

"It seems that in a case like the present that, where the property is of a private nature and vacant, the law demands a conveyance or record, as proof of ownership. Goldsmith v. State, 46 Texas Crim. Rep., 556, 81 S. W., 710; also, Hester v. State (Texas Crim. App.), 51 S. W., 952."

The Cox case, supra, was reversed upon another issue.

In the case of State v. Daniel, 121 N. C., 574, 28 S. E., 255, it is stated that the constituent element of the offense of arson is "the wilful and wanton" setting fire to any building of the kind therein named. The allegation of its being the property of anyone's is for purpose of identification only, citing 10 Am. and Eng. Enc. Law, 595. Said allegation is to give the person sufficient notice to prepare his defense and enable him to plead former conviction or former acquittal to a second indictment for the same offense. In statutory offenses for burning, the property may be described as "belonging to," "the property of," "owned by," "in possession of," or simply "of," a person named. 1 McLain, Cr. Law, sec. 529. Hence, when the building is described in the indictment as "the property of" some one, proof of possession is held sufficient evidence of ownership, for the title of the property is not in issue. Citing a number of cases. For like reasons, when the building is charged as being "in possession of" some one, the title is not ordinarily in issue.

Appellant concedes that under the authorities in this and other states, if McAdams, who was alleged to have been the owner of the property burned, was in fact in possession and occupancy of the premises, this fact

could have properly been shown by parol evidence. However, appellant takes the position that, because the premises were unoccupied, the offense charged against appellant became an offense against McAdams' title or ownership, and therefore the proof of title became absolutely essential to sustain the allegation of the indictment, and title to said property could not be proven in McAdams by parol evidence. We cannot agree to the proposition, and, under the weight of authorities, we feel constrained to hold that the house burned may be described as belonging to either the owner or the person in possession, and the proof of ownership, as well as the proof of possession, can be made orally and when so proven shall be sufficient proof of ownership.

A bill of exception is also taken to permitting the state to offer in evidence a fire insurance policy issued by the Phoenix Insurance Co. to W. J. McAdams covering the house alleged to have been burned by appellant. Said insurance policy was issued with McAdams as beneficiary and insured said house for the sum of $800. It seems to have been held in some jurisdictions that where a policy of insurance on the house alleged to have been burned was not held by accused, evidence of insurance is not admissible unless some connection is shown between the accused and the insurer. The admission of said insurance policy constituted error. However, we deem the error harmless. The minimum penalty was assessed, and we are unable to see how the proof of insurance, under the facts reflected by the record, could have been appropriated by the jury in determining the issue of guilt.

Bill of exception No. 8 complains that the witness, George Bridges, had stated, upon cross-examination by the appellant, that just prior to the fire he had been out in company with a woman, and, at the itme he saw the defendant leave the fire, he was on his way home; thereupon, counsel for the defendant asked the witness the following question: "George, who was the woman that you were with?" To which the witness answered, "I will not tell. It has nothing to do with this case." The bill further shows that appellant requested the court to require the witness to answer said question, but the witness' refusal to answer said question was upheld by the court. The court qualifies the bill to the effect that it was not shown or contended by appellant's counsel that the woman with whom the witness Bridges had been with that night was present at the fire or knew anything whatever about it, or that she was with the witness at the time he saw the fire; that when they asked the question as to where he had been that night, he said he had been out with a woman and was on his way home, and the court could not see who he had been visiting would throw any light on the transaction. The record shows that the said witness Bridges had testified and given the name of the person who was with him the time that he heard the explosion and saw the appellant run from the house. This bill of exception fails to show reversible error

in that the facts therein stated do not indicate that proof of the name of the woman in question would have been relevant and material to any issue in the case.

There are several bills of exception to the argument of the county attorney in this case, all of which have been qualified by the trial judge, and as qualified fail to reflect reversible error.

The bills of exception not discussed have been carefully examined, and the opinion is expressed that none of said bills present reversible error.

No reversible error appearing in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In Wilson v. State (Texas Crim. App.), 24 S. W., 649, Judge Hurt says it is not the law that in arson cases ownership must be proved by deed or some writing. The same doctrine is announced in the cases discussed in the original opinion, and we intended to follow this doctrine, and, if we did not make it plain, we here now say that proof of ownership of the property alleged to have been burned in arson cases can ordinarily be made by parol. We find in this state no cases holding directly contrary to this, but, in so far as any intimation or suggestion that the contrary should be the rule may appear in Goldsmith v. State, 46 Texas Crim. Rep., 556, 81 S. W., 710, Rogers v. State, 26 Texas App., 404, 9 S. W., 762, and Hester v. State (Texas Crim. App.), 51 S. W., 932, same will be overruled.

The ownership of the burned property in McAdams having been properly proved by parol testimony, the objection to the introduction of a certified copy of the deed to said property to McAdams, which objection was based on failure to file same and give proper notice a sufficient length of time before the trial, would seem of no avail. Such testimony of conveyance added nothing to the case against appellant, and could not have harmed him.

In our original opinion we declined to reverse the case for the admission of an insurance policy on the burned house, in which McAdams was beneficiary, and with which no connection of appellant was shown, basing our conclusion on the proposition that the guilt of appellant being manifestly supported by other testimony, and he having been given the lowest penalty, the error of the admission of the insurance policy would be harmless. Upon more careful review of the testimony we doubt whether we should have held the admission of this testimony erroneous. The case was one of circumstantial evidence. The house burned belonged to Mr. Mc-

Adams, who lived in Big Spring, a town situated several hundred miles from Corsicana. Appellant's mother, with whom he lived in Corsicana, was McAdams' agent and looked after this property. It had been vacant since January. It burned the night of July 6th. Mr. McAdams was a witness for the state, and his testimony in the record indicates that he was a very indefinite and unsatisfactory, if not an unwilling, witness, but he did admit that appellant's mother looked after this property for him, and that he, witness, was in Corsicana some ten days before the fire, and the house was then vacant. Mr. Bryant, an insurance agent, was introduced as a witness for the state, and testified, in the presence of the jury, to the existence of the insurance policy referred to in this bill of exception, and further testified that a vacancy permit was put upon said policy on July 2nd, and when asked as to who applied for the vacancy permit he testified, "As to who applied for it (the vacancy clause) will say that Mrs. Nash came to my office on the morning of the 2nd and said—." It having been put before the jury without objection that an insurance policy was against the property, and that same had upon it a vacancy permit, it might be seriously argued that the admission of the policy itself put nothing new before the jury. However, in view of the fact that when appellant was arrested the day after the fire he was badly burned, that he did not take the stand, but introduced his mother who testified that she was present on the morning of the day of his arrest and saw him when he received the burns mentioned as the result of a gasoline explosion, and that she also testified that appellant was at his home and in bed with her at 1 o'clock a. m. the night of the fire,—that being the time testified to by witness Bridges as the hour of the explosion in the burned house, following which he saw appellant leave the house and get in a car and go away, we would be unwilling to say that the trial judge was not within his discretion in allowing proof of the policy, and especially of the introduction of the vacancy permit placed thereon on July 2nd, four days before the house was burned, said permit being obtained, apparently, by the mother of appellant who was the agent of McAdams in Corsicana to look after the house. In a case of circumstantial evidence, the mind explores every available source from which legitimate light may be shed on the issue of the guilt of the accused. We are not apprized by the bill complaining of the introduction of the policy as to the state's purpose in so introducing same, and it may have been for the purpose of getting before the jury the date of the vacancy permit which was put on it on July 2nd, and which continued only for one month.

In the argument complained of in bill of exception No. 5, in replying to a severe attack made on witness Bridges by appellant's counsel, the state's attorney said he was "willing to stack Bridges up against Doyle Nash any time. This boy, Bridges, is an angel when you compare him to Doyle Nash." The proof showed that Bridges had pleaded guilty to

burglary. The court instructed the jury not to consider this argument. We would hardly be inclined to hold such argument so hurtful as to require a reversal, even though the court had not so instructed the jury. It put no new fact of harmful effect before the jury. It was only an expression of opinion by the state's attorney that he thought a burglar more admirable than a houseburner.

The state's attorney said to the jury, in substance, in another argument complained of that if appellant was burned at his home the morning after the alleged fire, the fire would surely have burned his shirt. "Why didn't they bring his shirt?" We see nothing in this argument in the nature of a reference to appellant's failure to testify. An 18-year-old boy making a fire and attempting to use gasoline, as testified to by appellant's mother and Mr. Lamb, would likely have on some kind of clothes, and same might reasonably be expected to exhibit evidence of a fire caused by an explosion of gasoline. What we have said in regard to this complaint applies, in substance, to another argument of the state's attorney in reference to the failure of the defense to produce the container or oil can in which a witness said he delivered three gallons of gasoline to the appellant about 9 or 10 o'clock the night of the fire. Appellant's mother claimed that her son picked up the gasoline can the morning after the fire and was in the act of pouring some on a fire he was trying to start when it exploded and burned him. We think it a fair criticism for the state's attorney to ask why the can was not produced.

State witness Bridges testified that he had been with a girl and was on his way home alone when he heard the explosion at the burned house and saw appellant run away from same. The court refused to compel Bridges to divulge the name of the girl with whom he had been. Appellant cites Berrian v. State, 212 S. W., 309. We do not find the case. Probably the case of Berrian v. State, 85 Texas Crim. Rep., 367, 212 S. W., 509, is referred to. We find nothing in it, or the other authorities cited in the motion in support of this complaint, which seems to indicate error in the court's ruling.

Being unable to agree with appellant's contentions, the motion for rehearing will be overruled.

*Overruled.*